May it please the court, I am Craig Smay, I represent Ashley Creek Properties in this matter which as your honor has indicated is a related matter to the earlier arguments heard here today The first of these appeals involves the standing of Ashley Creek to have raised a related claim The District Court appears to have conceded that Ashley Creek had standing except for an imminence requirement which it took to have been very recently imposed by the Supreme Court's ruling in Summers v. Earth Island Institute The matter is of some importance because with respect to the claim raised by Ashley Creek there appears to be no defense except standing its claim that the agency here simply refused to consider what is on its face a facially reasonable alternative source of supply to one which has been discussed here today the Smoky Canyon Mine and failed adequately to consider the alternative of other Idaho phosphate reserves In that respect it's important to remember your honors that the purpose of the project here is to continue a supply of phosphate ore to the Pocatello fertilizer plant run by Simplot Company The case therefore, at least with respect to standing, raises a procedural injury which is refusal to consider an alternative source of supply to a very large phosphate reserve near Vernal, Utah part of which is presently controlled by Simplot and used by them to supply their other fertilizer plant part of which our state of Utah lease is controlled by Ashley Creek Phosphates You still have to get over Summers, how do you do that? Excuse me? You still have to get over Summers, how do you do that? It's not difficult to get over Summers at all it seems to me If your honors wish that issue addressed first Summers, if your honors will notice, is a case involving general regulations in which the project had been taken off the table to use the Supreme Court's phrase The court said you need to address the applicability of the regulations to the property in which you claim an interest first of all and then you need to show that you will soon visit that property The statement in Summers is the claim is quote not tied to application of the challenge regulations because it did not identify any particular site and because it related to past injury rather than imminent future injury This court has rendered a similar ruling recently in Ecology Center Inc. v. Tidwell which says plaintiffs lack standing because they have not identified an application of the Forest Service regulations that threatens their interest with imminent harm Well this case is not a case of regulations, general regulations It is a case of a specific permit for a specific project The point of Summers is that procedural injury isn't enough and that's what you're essentially claiming in this case, right? Yes, and that can be addressed quickly as well but I would simply point out that there's no need in this case to address applicability of regulations because you're not dealing with regulations and furthermore there's no need to show that you'll visit the property soon and it's conceded that they own an adjoining property It has always been the rule in this circuit that ownership of geographically approximate land creates a presumption that you'll suffer environmental injury You don't have to visit the land, you simply have to own it and it's conceded in this case that Ashton Creek owns mining rights in land one of which is actually part of the Smoky Canyon complex but they also own leases in Utah So it seems to me that the two requirements that exist in Summers simply don't apply in this case Summers doesn't apply in this case Summers doesn't change the usual rule that in procedural injury cases the standards of imminence and reversibility are substantially relaxed You don't need to show that the alternative you propose would have been chosen nor do you have to show that the harm would have resulted in a short time or any time The standing rule is that a procedural injury suffices so long as the procedures in question are designed to protect some threatened concrete interest That's the ultimate basis of standing There must be a concrete interest threatened by failure of the procedure Procedural failure in this case is the failure to provide a complete EIS That is governed by what is required of a complete EIS It's set out in 42 U.S.C. section 4332-2c It includes of course, one, environmental impacts and two, unavoidable adverse environmental effects but it also includes three, a consideration of alternatives including alternative sources of supply and four, the relationship between short-term uses and long-term productivity and five, commitments of resources The failure here includes not only failure to consider environmental impacts such as were discussed before your honor this morning but the failure to consider alternative sources of supply that would promote long-term productivity and would avoid the commitment of what I would call dirty resources Idaho phosphate reserves polluted with selenium in preference to clean ones Utah reserves which don't have a selenium problem The concrete interest alleged by Ashley Creek is ownership of the alternative supplies and given the scarcity of phosphate and the cost of transporting it really the only practical alternatives for this particular phosphate fertilizer plant are the vernal reserves which are already supplying Simplot's Pocatell Rock Springs plant or other phosphate reserves in Idaho Counsel, can you explain to me why Utah doesn't have a selenium problem? Well it's a natural constituency of the ore in Idaho which doesn't occur in Utah It simply isn't there For example, you never hear of the Simplot mine in Utah producing selenium problems in Utah and it's the same reserve I mean their reserves is as close to Ashley reserves as you are to me You simply drive your bulldozer across the invisible boundary and start mining in Utah Otherwise there's a mine in place, there are beneficiating plants in place and there is a common carrier pipeline in place to get it to Rock Springs and then by rail to Pocatell The threat and injury to Ashley Creek is not merely the environmental one the usual ones that occur to anyone owning land in the locale It's also deferral of development of clean reserves in preference for dirty reserves to put it in a fairly gross phraseology I don't think in this case that the first of those injuries can even be argued There's no question that Ashley Creek owns mining rights part of the Smoky Canyon complex They are geographically proximate and under the Kootenai tribe case, the Douglas County case and indeed the Ashley Creek v. Norton case previously rendered by this court that fact alone creates a presumption that Ashley is subject to the environmental harms But further, the commitment of dirty resources is an injury not only because it defers earning royalties The royalties go to your parent company, right? Excuse me? Don't the royalties go to the parent company? The parent company is Ashley Creek Properties Right Right It not only defers That's not the company that's seeking relief here Yes it is, same company There's no difference between the two of them It not only defers royalties but it wastes the costs of developing the alternative reserves What is the point of going out and spending the very substantial costs of finding clean reserves, developing clean reserves and in this case obtaining their access to common carrier transportation if you are simply going to allow dirty reserves to be used in preference Let's just say your time has expired Do you want to conclude with your thought? Fine Those it seems to me are economic injuries but under the laws of this circuit, the Port of Australia case the Ranchers Cattlemen's Association case those are not disqualifiers where they are clearly connected to the basic purposes of the act Finally, the court determined that Ashley Creek could not claim joint standing with Great Yellowstone on the basis that the cases had not been consolidated that could easily have been consolidated Judge Wendell thought that that would not cure the problem but there are at least two Supreme Court cases which find that it does One is Horn v. Flores rendered last year and the other is Secretary of the Interior v. California in which cases which can be consolidated the standing of one plaintiff will suffice for standing for the others Thank you, Counsel Your Honors, Counsel was just addressing 09-357-274 so I assume that you'd like me to respond to that Okay, so this is the standing case, the third case Again, I'm Justin Pideaux, nice to be speaking with you once again I think that the fundamental issue here is that the interest that Ashley Creek is asserting is really a procedural interest So what? Is a procedural interest, they allege a procedural injury At times in their brief, they concede that they're alleging a procedural injury Their sort of first cut argument is that's fine, Summers doesn't apply Mr. Sney made that argument again today Summers applies to all procedural injury cases and as a case this court decided recently that Ashley Creek submitted a 28-J letter on yesterday to Wilderness Society v. Wray applied Summers in a very similar circumstance where there was a concrete project and the court said you need to show that you have an imminent injury from this project In that case it was a timber project or something of that sort and one of the affiant said, well I've used this area in the past but because the affiant didn't make allegations that they had sort of a foreseeable and predict, you know, they had a concrete plan to return That view is not being enough I'd also like to submit that the government has never conceded that Ashley Creek owns adjoining property, which is what I think Mr. Sney just suggested At most, Ashley Creek owns royalty and possibly a reversionary interest in a phosphate lease, which is considerably different than the kind of that typically gives rise to standing if you have a geographically proximate property If you live next to a project, I think it is a reasonable assumption that you're going to be affected by whatever environmental consequences occur at that adjoining project When you own a royalty interest in a phosphate lease, it's not clear in that same way that any sort of environmental harm related to the Smoky Canyon mine expansion would flow to your interest It's sheer speculation that somehow a future mining plan on these adjacent leases which may or may not be owned by Ashley Creek's parent is going to be interfered with because of any sort of problem at the Smoky Canyon mine Do you know who holds the fee ownership? The United States owns the fee ownership of the property All these leases are on I should have phrased it differently Is there a significant lease interest that's held by someone other than the government? With phosphate leases generally under the congressional law the government uses a competitive bidding process for phosphate reserves There are a number of leases all over the Caribbean National Forest and a number of different known phosphate areas that are owned by a variety of companies Simplot owns some of them There's a declaration in the record from BLM which identifies the owner as recorded in the BLM office of all the leases that Ashley Creek has identified I don't remember the name of the company offhand In the district court, after judgment had been entered Ashley Creek submitted an additional letter between Ashley Creek and another company which does not currently own any of the leases from I think 1970 which purported to transfer some unidentified leases in the area Nowhere in the letter are the leases identified Ashley Creek retained a reversionary and a royalty interest There's no record of that with BLM We don't know which leases those were about We know that they were in the Caribbean National Forest It says so in the letter And moreover, this was all post-judgment as part of a motion for reconsideration that Ashley Creek had filed And moreover, as I submitted to the court Ashley Creek doesn't suggest that there's any concrete plan to mine those leases by a company that owns them which is not Ashley Creek Furthermore, as an alternate ground of affirmance I think the potential standing issue is one that this court has decided in the past and I would submit is dispositive here as well I'm happy to answer any further questions Any further questions? Thank you Well, I'm happy to stand in our briefs Thank you Do you want to argue on this one or do you want to save your fire for the next one? All right So now let's I actually called the other case first but that's all right Everybody understands what we're talking about So why don't you argue your second case then, Mr. Smythe If your honor, please The other is quick and easy to argue and there are some important points of rebuttal if I may use part of that time to raise those Well, unless you want the government to stand up again If the government wishes to stand up again Go ahead Fine With respect to intervention in this case The grounds on which intervention was disallowed are said to have been delay and untimeliness and that the interests which would be asserted are speculative that undue speculation would thereafter occur It has frequently been said in these cases that time would be wasted speculating about the viability of the for example, the Vernal alternative In point of fact because no EIS was done on that alternative no speculation is even permissible You need to have a record on which to base any sort of speculation of that kind It's the rule in this circuit, for example that on the issue of standing you cannot require the party asserting standing to perform an EIS on behalf of the government that that merely confuses the standing issue with the merits That's the rule in Kootenai tribe, for example and that, it seems to me, is what is attempted to be done here Somehow, Ashley is supposed to supply at this point what should have been supplied by the government itself in addressing the Ashley Creek alternative But furthermore, the fact that the government did not provide that kind of consideration of the EIS renders the EIS void on its face inadequate on its face That is a matter which can be considered without delay of any kind And it is a matter which goes in many ways directly to the issue which was raised by Grady-Elliston company in the injunctive proceedings in this case If in point of fact the EIS is inadequate on its face then there's no harm that can be shown to Simplot in sending the thing back to have the EIS performed properly In fact, you can't even prove that the purpose for which the project is put forward is a valid purpose Why do you need to develop Smoky Canyon if you can get all the phosphates you need cleaner and cheaper at Vernal, Utah by simply driving your bulldozers across the boundary and extending your mine onto the rest of that reserve The problem was attempted to be surmounted in this case by supplying an affidavit of a Mr. Hunt We objected to it not only because it states no basis but because it now speculates about what is not in the administrative record in this case And that was put forward supposedly to counteract a statement of Grady-Elliston which is made again in the briefs they submitted here today that the ashley reserves are sitting there they're ready to be used at any time and that that ought to be the appropriate resolution in this matter It isn't required on behalf of Grady-Elliston or on behalf of Ashley Creek to show that those reserves are ready in any particular way What is required to be shown is that the agency simply did not appropriately consider them did not eliminate them as the proper solution in this case and that's what ought to have been done so that the denial of intervention in this case in seems to me straightforward violation of the rule regarding intervention on the basis that there would be delay if in fact the intervention had been permitted is false on its face It doesn't take any time at all to observe that the EIS in this case refuses to consider those alternatives furthermore that the granting the intervention would have invited speculation is not appropriate either because speculation is not permitted in the absence of a record the speculation ought to have occurred in the EIS itself obviously the interests of Ashley Creek were implicated by the decision not to intervene and not to allow them to present any of this material as amicus earlier although this court permitted an amicus filing here the issue whether or not there is a ready alternative source wholly unconsidered is central to the issues here If I may then just briefly and it will take a very brief time to comment about Mr. Pideaux's argument I sent a letter to the clerk calling the Ray case to the attention of the court because it is entirely consistent with my argument Ray is a case about general regulations and it applies the rule of Summers where you have general regulations you must show a applicability first and be intent to visit second it does not apply that rule where you're not dealing with regulations where you're dealing with a specific permit of a specific project furthermore the claim that somehow Ashley's interest is not ownership is belied by the simple definition of a mineral lease Well where's the lease in the record? Where is it? Where in the record do we find the evidence of your company's interest in the lease? There is an affidavit reciting what leases they hold entirely uncontested and showing their locations We don't have the leases themselves right? Excuse me? We don't have the leases themselves? The reference to the lease number will easily produce the reference by pulling up the public record Well I know but we don't have the public record in front of us so we don't know we just have whatever's in the affidavit and is it the leasehold interest that your company owns or just a reversionary interest? I have both but you must understand what the leasehold interest is under a federal mineral lease you have the right to take the minerals and sell them it is an ownership interest in the minerals which obviously are part of the ownership in a mineral lease is sufficient to give you standing to challenge an EIS on adjacent property Try the Port of Astoria case, the Douglas County case, the Cattleman's case Indeed look at my tribe case, look at the earlier Ashley Creek versus Norton case All of those recite that an ownership interest in... Is a general matter? Well whether it's a general matter or a specific matter the rule they create is that ownership of an interest in land nearby creates a presumption of environmental harm. Down to about a minute? The fact that the BLM record in this Ashley's interest is simply a fault of the BLM. The interests exist they were proffered to the court and the court accepted them. And the fact that Ashley Creek has changed its name over time as the interests have been devolved upon successor companies is of no importance whatever it seems to me. The present leaseholds are owned by the present plaintiff and they make the present claims. Okay. Mr. Barker? Thank you, Your Honor. Albert Barker on behalf of the J.R. Simplot Company. I'll try to make up some of the extra time I took. I just have a few points that I would like to make. Number one, I think it's important for the court to read the Tenth Circuit opinion. Will you speak up a little louder, please? Sorry, Your Honor. I think it's important for the court to read the Tenth Circuit opinion in the Ashley Creek Chevron case which involved the pipeline from Vernal to Rock Springs. And you'll read in there that the Ashley Creek properties and Ashley Creek Phosphate or whatever they've been over the years is essentially a mine. They have no employees. The company was operated out of the home of Mr. Archer. It needed money to get this mine up and running that it didn't have. And in fact, the Tenth Circuit recognized that Ashley Creek was in the business of litigating, not in the business of developing mines.  understand how Ashley Creek has a mine that as J.R. Simplot Company has attempted to argue stands ready to supply Simplot. The facts don't support that claim. That claim was asserted in the context of whether or not what harm would ensue from an injunction. It wasn't asserted by G.Y.C. and you didn't hear Mr. Presso or see any of his briefs saying that the EIS was defective on that ground. So let's kind of turn to a different subject. The government is required to consider alternatives. What alternatives were considered in respect to this expansion? Well, Your Honor, there were I think alternatives A through D with subparts of each one and then of course the no action alternative which would include not mining at all. And so the no action alternative was in essence what if we don't allow Simplot to do this. Was that the only alternative considered? No, Your Honor. The alternatives had to do with the extent to which certain parts of the property would be mined and would not be mined, how they would be. But it was all in the context of the existing mine and its possible expansion. Yes, Your Honor. Except for the no action alternative. There was a no action alternative. That's what I was trying to say. Yes. Well, I don't know which case you're arguing. I'm trying to respond on the intervention case in Judge Williams' G.Y.C. case. And Your Honor, the point I was trying to make there. I'm sorry. Go ahead. No. But as I understand the issue on the primary issue in intervention cases is timeliness, isn't it? Your Honor, exactly. In this case, this court directed the district court to go back and expedite the hearing on the merits of the case. And the court did so and set a schedule. And Mr. Smay's local counsel in Idaho, Mr. Wood, is on the court's docket notice that he got that information of what the schedule would be. And that schedule required all briefing in the entire case to be done by the end of June. And now, three weeks later, two and a half weeks later, Ashley Krieg, after having been involved in this case on And the judge said, that's untimely. And that was a correct decision given the expedited action. At that point, what had happened after remand? Had the motion schedule already been set? That's what I was explaining. The motion schedule and the briefing schedule after remand required all briefs to be completed by the end of June. And it wasn't until the middle of June, which was, let's see, a week, I think, or ten days before argument was scheduled. And the judge, Judge Williams, had committed already to issue a decision by August the 4th, which he did meet. The motion was already fully brief. That's exactly right, Your Honor. But the other point I wanted to make in terms of what, if Ashley Krieg is trying to argue the merits of an issue that was not brought into the case by GYC, it is an intervener, has to take the case as it finds it. And you can't expand the case and create a whole separate issue that was not before the parties. And that's what Ashley Krieg tried to do by arguing the merits of whether or not the FEIS was adequate on those grounds. And the issue came up in the GYC context only as to whether or not there was going to be harm. And that's why we submitted the response to that case, or to that argument that Ashley Krieg stands ready. That's why we submitted the third hunt declaration explaining the difficulties in trying to get any ore from Rock Springs, Wyoming to Pocatello, including the substantial environmental effects to Pocatello of having to deal with this dry ore as a pipeline. Very good. Thank you. Thank you. I'm happy to answer any questions, but if the court doesn't have any questions, we're happy to stand on our briefs. All right. Very good. The case shall start to be submitted for decision.
judges: Fletcher B. , Tashima, Thomas